**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**JAMES B. STEGEMAN,**

                                        **Plaintiff,**

        **v.**                                                      **1:06-cv-2954-WSD**

**STATE OF GEORGIA, through
GOVERNOR SONNY PERDUE, In
His Official Capacity, et al.**

                                        **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff James Stegeman's ("Plaintiff")

Motion for Preliminary Injunction and Temporary Restraining Order [6];

Defendants State of Georgia, DeKalb County Department of Family and Children

Services ("DFCS"), State of Georgia Department of Human Resources ("DHR"),

and Georgia Superior Court, Stone Mountain Judicial Circuit's ("the Superior

Court") (collectively "the State Defendants") Motion to Dismiss [20]; Plaintiff's

Motion for Order for Clerk to Sign and Seal Summonses for the State Defendants

[24];[1] Plaintiff's Motion for Exemption for Payment of Pacer User Fee [26];[2]

---

[1] In his Motion for Order for the Clerk to Sign and Seal Summonses for the
State Defendants, Plaintiff expresses concern that he did not properly serve the
State of Georgia defendants.  (Mot. for Order [24].)  Plaintiff asks the Court to

Defendant Officer R.B. Porter's Motion to Dismiss [27]; Plaintiff's Motion to

Alter Service of Process [39];[3] and Defendants DeKalb County, Captain Kellie

Hughett, Dennis Carlock, Judge Jeryl Debra Rosh, DeKalb County Fire and

Rescue Services ("Fire and Rescue Services"), and DeKalb County Probate

---

direct the Clerk of Court to sign and seal summons so that the State Defendants may be served.  The State Defendants respond that they received Plaintiff's Complaint and waived formal service by filing executed waivers of service.  (Resp. [29].)  Given these circumstances, the Court finds such an Order unnecessary, and Plaintiff's Motion is **DENIED**.

[2]  Plaintiff requests that this Court issue an Order exempting him from payment of PACER User Fees for a period of 12 months with the right at the end of that time to seek an extension if necessary.  (Mot. for Exemption [26].)  This request is denied as moot.  Pro se litigants are required to file documents with the Court in paper form.  If Plaintiff desires free access to the electronic docket, it is available at the Clerk's Office.  Because this case is dismissed, it is unnecessary for the Court to enter an Order for future filings.  Plaintiff's Motion for Exemption is **DENIED** as moot.

[3]  Plaintiff also filed a Motion to Alter Service of Process for Defendant Hughett [39].  Plaintiff states that a professional process server attempted to serve Hughett at her place of employment, but was advised that Hughett was not allowed to come out and accept service.  In their Motion to Dismiss, the County Defendants do not argue that Hughett was improperly served and have responded on behalf of Hughett in her individual and official capacities.  (County Def. MTD [37], at 1.)  Thus, the Court **DENIES** Plaintiff's Motion as **MOOT**.  Plaintiff also filed a Motion to Recover Costs incurred in attempting to serve Hughett.  (Mot. to Recover Costs [72].)  Plaintiff has not submitted any evidence that Hughett did not comply with Rule 4(d)(2) and thus he incurred unnecessary expenses in serving an individual pursuant to Rule 4(e).  Plaintiff's Motion is **DENIED**.

Court's (collectively "the County Defendants") Motion to Dismiss [37].  Plaintiff has filed numerous other motions which the Court will also address.

## I.   BACKGROUND

Plaintiff brings this action against numerous defendants for violations of his civil rights arising from the ruling of the DeKalb County Probate Court ("the Probate Court") that a guardian be appointed for his elderly aunt, Jean Caffrey.[4] Plaintiff claims that he was improperly accused of elder abuse and financial fraud, was forced to fight a frivolous lawsuit for two and a half years, and that Defendants revoked his Power of Attorney for Ms. Caffrey and placed her in an unknown location.  Plaintiff alleges Ms. Caffrey died in the state's care due to "suspicious" circumstances.[5]  Essentially, Plaintiff attempts to assert federal claims to remedy unfavorable results in several state and probate court actions affecting the Caffrey estate.

---

[4] For purposes of a motion to dismiss, the Court takes Plaintiff's allegations as true.  Thus, the Court discusses the facts as they are alleged by Plaintiff in his Complaint.

[5] Plaintiff does not purport, on behalf of Ms. Caffrey or himself, to bring any wrongful death claim or other action for Caffrey's death.

Plaintiff alleges that he had a close relationship with his aunt, and that she depended on him on a daily basis to take care of her home, car, and any other problems she had.  Caffrey lived four houses away from Plaintiff and his "living partner," Janet McDonald.  In January 1998, Caffrey appointed Plaintiff as her attorney-in-fact through a Special Durable Power of Attorney ("POA"), and in April 1999, Caffrey signed over to Ms. McDonald her share of accounts in which she held a joint tenancy with Plaintiff.

In May 2001, Plaintiff alleges that a friend of Caffrey's made a false complaint that Caffrey was being abused, kept against her will, and had fallen. (Compl., at ¶ 32.)  Sandra Al-Khaja,[6] a caseworker for DeKalb DFCS investigated Plaintiff in response to the complaint.  Plaintiff claims that no wrongdoing was found, and DFCS did not take further action.

The incident providing much of the basis for Plaintiff's Complaint occurred on June 4, 2002.  Plaintiff claims that while McDonald was taking care of Caffrey, Caffrey pretended to fall and "laid herself on the floor."  McDonald called 911. Defendant Lt. Hughett and Defendant paramedic Dennis Carlock responded to the call.  Plaintiff also arrived at the Caffrey home around the same time as Defendants

---

[6] Ms. Al-Khaja is not a defendant in this action.

Hughett and Carlock.  Hughett and Carlock determined that nothing was wrong with Caffrey, and Plaintiff asked them to move Caffrey from the upper landing and take her downstairs.

Defendant Hughett called the Stone Mountain Police Department to report the incident as one possibly involving family violence because Hughett believed that Plaintiff was being verbally abusive and refused to let Caffrey be examined. Defendant Officer Porter responded to the call.  He filed a "Family Violence Incident Report" stating that Caffrey lived alone, was being confined to certain areas of her home, and did not have a telephone.  Porter further stated that Plaintiff was determined to keep Caffrey confined and was angry that she was not following his orders.  (Porter Family Violence Report, attached to Complaint [1] as Ex. 9.) Porter, Hughett, and Carlock determined that Caffrey should be taken to the hospital and that Hughett should ask Social Services to investigate.

Plaintiff claims that the defendant officers acted improperly in responding to the 911 call and that they intentionally caused Plaintiff to lose custody of Ms. Caffrey.  He states that when Carlock, Hughett, and Porter arrived, they all "immediately [went] to the kitchen stove."  Plaintiff alleges these Defendants intended to "set him up" because although Defendants were responding to a call

about an elderly woman falling, they all went directly to the stove together, and Officer Porter falsely reported that Caffrey's life may be at risk.  Plaintiff claims that Defendants intended to arrest him that morning for attempting to kill his aunt and alleges that "most likely the gas on the stove was to be on and the home filled with gas."  (Compl., at 13 n.11.)  Plaintiff alleges that he foiled the set up, because several days prior, he instructed McDonald to remove the knobs from Caffrey's stove because Caffrey did not know how to turn the stove off.

On June 5, 2002, Ms. Al-Khaja, having received the report from Defendant Porter, petitioned the Probate Court for an Emergency and Permanent Guardian For An Alleged Gravely Incapacitated Adult.  Plaintiff claims Al-Khaja made unsubstantiated allegations that he had committed financial fraud and elder abuse. The petition stated that Caffrey was physically disabled and needed assistance managing her daily living activities, including her finances, that Caffrey was afraid of Plaintiff, and she no longer wanted him to manage her finances.

On June 13, 2002, Defendant Judge Jeryl Rosh presided over an Emergency Guardianship hearing in the Probate Court.[7]  Judge Rosh allegedly found that

---

[7] It appears that Defendant Rosh was not yet an elected probate judge at this time, but was exercising the jurisdiction of Probate Judge Marion Guess pursuant to O.C.G.A. § 15-9-13.

Plaintiff had engaged in elder abuse and financial fraud, and revoked the special durable POA.  Judge Rosh appointed John Joyner ("Joyner") as the County Guardian of Caffrey's property, sealed the record, and held from public view any information pertaining to Caffrey's mental condition.  Plaintiff claims that he was not given a transcript of the hearing, and that Judge Rosh improperly gave Joyner a tape of the hearing.  Plaintiff claims that these actions constituted an "abduction" of Caffrey and that she was hidden from her family.  On September 23, 2002, Joyner petitioned the Probate Court to sell Caffrey's home, and an order was entered authorizing the sale and appointing a guardian ad litem for sale of the property.

Also on September 23, 2002, Joyner filed a civil action against Plaintiff in the Superior Court of DeKalb County for an accounting and damages regarding a Wachovia investment account (the "Wachovia Account") that Plaintiff shared with Caffrey as a joint tenant (the "Accounting Action").  The case was assigned to Judge Linda Hunter.[8]  Plaintiff filed a Counterclaim, alleging that his rights had been violated and his assets improperly taken.  As a result of the litigation, the assets in the Wachovia Account were frozen until resolution of the claims.

---

[8]  Judge Hunter is not a defendant in this case.

Plaintiff alleges that on March 4, 2003, an investigator from the Elder Abuse division of the DeKalb County Solicitor's Office ("Solicitor's Office") conducted a "secret" interview, or "controlled deposition," with Caffrey.  The tape of the interview was allegedly given to Joyner and his counsel in the Accounting Action. Plaintiff claims that Joyner did not inform him of the interview, which prevented Plaintiff from gaining access to vital information.[9]

On April 21, 2003, during a hearing in the Accounting Action, Joyner's attorney, Mr. Turner, announced that Ms. Caffrey had died four days earlier on April 17, 2003.  Plaintiff claims that during the nine months that Caffrey resided at the Carestone facility in Cobb County, Georgia, she suffered four falls and that her family was not notified of the accidents or her death.

On May 5, 2003, Judge Rosh appointed Frank Lillig ("Lillig")[10] as a Temporary Administrator of Caffrey's estate in the Probate Court.  In support of his petition to become Temporary Administrator, Lillig stated that Caffrey and Plaintiff were estranged and that the DeKalb County District Attorney's office was

---

[9] Plaintiff claims he did not learn of the interview until it was filed with the Superior Court on January 23, 2004.

[10] Lillig is not a defendant in this action.

investigating Plaintiff for felony theft by taking and elder abuse.  On May 6, 2003, Judge Hunter allowed Lillig to be substituted as plaintiff in the Accounting Action.

On January 14, 2004, the probate hearing on the wills was held in the Probate Court.  Plaintiff claims that Joyner's attorney called witnesses who falsely testified that Caffrey was abused by Plaintiff and McDonald.

On March 25, 2004, Plaintiff claims he and Lillig entered into a settlement in the Accounting Action.  The parties agreed that Plaintiff would receive the remaining funds in the Wachovia Account, that the administrator of the Caffrey estate would assist Plaintiff in putting the Wachovia Account in his name, and the remaining funds in the Caffrey estate would be divided between three charities. On April 5th, 2004, notice of the settlement was filed with the Superior Court.

Plaintiff claims that in May 2004, Mr. Turner attempted to alter the terms of the settlement agreement.[11]  Plaintiff wrote to Judge Hunter requesting that the "original" settlement agreement be enforced.  In June 2004, Plaintiff's attorney informed him that if he refused to agree to dismissal of the case, the Wachovia Account would be frozen again because the litigation would continue.  Plaintiff

---

[11]  Although Plaintiff's allegations are not completely clear, it appears Plaintiff disagreed with fees for the Caffrey estate attorneys being paid out of the Caffrey estate before the money was distributed to charity.

refused to sign the dismissal, and on June 10, 2004, Mr. Turner notified Wachovia that the Caffrey estate revoked the authority to unfreeze the Wachovia Account.  In August 2004, the attorney who had been representing Plaintiff in the Accounting Action withdrew her representation of Plaintiff.  Plaintiff hired a new lawyer.  On August 23, 2004, Plaintiff filed a motion to enforce what he argued was the original settlement agreement he made with the Caffrey estate.  Judge Hunter denied the motion.

Plaintiff claims that because Wachovia would not release the Wachovia Account until the Accounting Action was concluded, he was "blackmailed" into signing a new settlement agreement.  The agreement again allowed him to receive the entire amount of the Wachovia Account in his name, less $5,000 to pay the fees of Plaintiff's attorney.  In October 2004, Wachovia released the Wachovia Account to Plaintiff.  Plaintiff claims that between $250,000 and $300,000 was missing from the account.

On April 5, 2005, Lillig filed a Petition for Discharge with the Probate Court.  Plaintiff filed an objection to the Petition for Discharge, alleging that Lillig had failed to satisfy a bank loan and a credit card bill from the Caffrey estate.  Lillig moved for Summary Judgment on September 5, 2005.  On October 27, 2005,

a hearing was held, with Mr. Turner representing Lillig as Temporary Administrator and Plaintiff appearing *pro se.*

On November 3, 2005, Judge Rosh granted summary judgment in favor of Lillig and the Caffrey estate.  She found that Lillig made a prima facie showing that he fulfilled his duties as executor and that the administration of the estate was complete.  Judge Rosh further held that Plaintiff failed to raise any genuine issue of material fact, that the evidence Plaintiff submitted was largely irrelevant, and that the relevant evidence did not raise any doubts that the administration of the Caffrey estate was lawful.  Judge Rosh specifically noted there was no evidence the bank loan or the credit card bill were debts of the estate.

On January 3, 2006, Plaintiff and McDonald filed an action against Wachovia in the Superior Court of DeKalb County (the "Wachovia Action"), alleging dozens of state-law claims, including breach of contract, grand larceny, fraud, and conspiracy.  The Wachovia Action was assigned to Judge Hunter because it was related to the Accounting Action.  On February 6, 2006, Wachovia removed the case to federal court.  On April 4, 2006, this Court remanded the Wachovia Action to the Superior Court of DeKalb County for lack of federal jurisdiction.

-11-

Plaintiff complains that Wachovia defaulted in the action and filed an answer outside the deadline to respond and that Judge Hunter improperly allowed the answer.  Plaintiff also challenges many rulings made by Judge Hunter and generally alleges that his case was handled improperly.

Plaintiff's former attorney in the Superior Court Accounting Action, Pattie Williams of the Hicks Law Firm, filed an action against Plaintiff for breach of contract (the "Hicks Action") in the State Court of DeKalb County.  She alleges that Plaintiff did not pay bills incurred during her representation of Plaintiff.  The Hicks Action and the Wachovia Action are still pending.

## II.   PROCEDURAL BACKGROUND

On December 5, 2006, Plaintiff filed this action against numerous Defendants, including the State of Georgia, through Governor Sonny Perdue in his official capacity, the Georgia DHR, DeKalb County through CEO Vernon Jones in his official capacity, the DeKalb County DFCS, DeKalb County Fire & Rescue Services, Lt. Hughett, paramedic Carlock, Stone Mountain Police Officer Porter,[12] the DeKalb County Probate Court, Judge Rosh, the Georgia Superior Court, the

---

[12]  Hughett, Carlock, Rosh and Porter are all sued in their official and individual capacities.

State Court of Georgia, the DeKalb County Solicitor's Office, and numerous Doe defendants.[13]  Plaintiff asserts nine claims against Defendants, including claims for violation of equal protection and due process and municipal and supervisory liability under 42 U.S.C. § 1983, violation of 42 U.S.C. § 1985(3), malicious abuse of process and malicious prosecution, common law conspiracy, negligent and intentional infliction of emotional distress, and defamation.

On February 5, 2007, the State Defendants filed their Motion to Dismiss. On February 13, 2007, Defendant Officer Porter filed his Motion to Dismiss, and on February 20, 2007, the DeKalb County Defendants filed their Motion to Dismiss.  Plaintiff has inundated the Court with motions and filings in this case and

---

[13]  "[F]ictitious party practice is not permitted in federal court."  New v. Sports & Rec. Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); see also Lewis v. City of Montgomery, No. 2:04-CV-858-WKW, 2006 WL 1761673, at *2 (M.D. Ala. June 27, 2006) ("In general, 'fictitious-party pleading is not permitted in federal court.'") While courts have sometimes made exceptions when the plaintiff may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly, the unspecific description of the John Doe defendants in this case does not fall under this exception.  Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service). Defendants John Does 1-100 and Jane Does 1-100 are therefore dismissed.

has made consideration of the pertinent issues confusing and difficult.  The Court will address each of Plaintiff's motions in this Order.

## III.   DISCUSSION

### A.   <u>Standard on Motion to Dismiss</u>

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well-settled.  Dismissal of a complaint is appropriate only "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  <u>Wagner v. Daewoo Heavy Indus. Am. Corp.</u>, 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or

legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

      B.     <u>Federal Claims Asserted Against Defendants</u>

      *1.     The State Defendants' Motion to Dismiss*

The State Defendants primarily argue that Plaintiff's federal claims against them should be dismissed because: 1) Plaintiff's claims are barred by the statute of limitations; 2) they are not "persons" capable of being sued under 42 U.S.C. § 1983; and 3) they are entitled to Eleventh Amendment Immunity.

The statute of limitations for § 1983 claims is the statute of limitations given by state law, which, in Georgia, is two years.  <u>Williams v. City of Atlanta</u>, 794 F.2d 624, 626 (11th Cir. 1986); <u>see also</u> O.C.G.A. § 9-3-33.  This two-year statue of limitations period also applies to claims brought under § 1985.[14] <u>Williams</u>, 794 F.2d 625 n.1.

Plaintiff filed this action on December 5, 2006.  Thus, any claim in which Plaintiff alleges he suffered injuries under § 1983 or §1985 must have occurred on

---

      [14]  A federal claim for malicious prosecution is properly brought under § 1983 and thus is also subject to the two-year limitations period.  <u>Whiting v. Traylor</u>, 85 F.3d 581, 584 n.4 (1996) (noting that malicious prosecution involving the violation of a constitutional right is actionable under § 1983).

or after December 5, 2004.  In this case, almost all of the wrongs Plaintiff alleges

to have suffered occurred before this date.  The primary incident about which

Plaintiff complains–Defendants Hughett, Carlock, and Porter's response to the 911

call and the filing of the petition for emergency guardianship–occurred in June

2002, well outside the limitations period.  Ms. Caffrey died in April 2003.  The

Accounting Action was settled and concluded, with Plaintiff receiving the funds

from the Wachovia investment account, in October 2004.  All of Plaintiff's federal

claims arising from these events are barred by the two-year statute of limitations.

    Plaintiff argues that the statute of limitations does not bar his claims because

they constitute continuing torts.  When a § 1983 action accrues is a matter of

federal law.[15]  Mullinax v. McElhenney, 817 F.3d 711, 716 (11th Cir. 1987).  A §

1983 action does not accrue until the plaintiff "knows or has reason to know that

he has been injured. . . . [and] until the plaintiff is aware or should have been aware

who has inflicted the injury."  Id.

_____

    [15] "In Section 1983 cases, the length of the limitations period, and the
closely related questions of tolling and application, are to be governed by state
law."  Griffin Indus., Inc. v. Couch, 2006 U.S. Dist. LEXIS 17285, at *16 n.4
(N.D. Ga. Mar. 23, 2006) (citing Wilson, 471 U.S. at 276-77).

The continuing tort doctrine tolls the limitations period where the injury resulting from a tortious act is not immediately apparent, and the victim could not in the exercise of ordinary care have learned of it.  Parker v. Vaughan, Ga. App. 300, 302 (1971); see also Everhart v. Rich's, Inc., 229 Ga. 798, 802 (1972).  The continuing tort theory applies where a plaintiff could not have discovered the injury the plaintiff alleges to have suffered.  Here, Plaintiff was aware of the injury more than two years before the Complaint was filed, and the claims are barred.[16]

The only action by any of the State Defendants which allegedly occurred within the limitations period is Judge Hunter's processing and rulings in the Wachovia Action, which Plaintiff filed in the Superior Court in January 2006.[17] Judge Hunter is not a defendant in this action, thus the Superior Court is the only possible defendant implicated in the allegations relating to the Wachovia Action. It is unclear to what extent Plaintiff relies on the processing of the Wachovia

---

[16]  Plaintiff's argument that O.C.G.A. § 9-3-99 tolls the statute of limitations because he was accused of a crime fails.  This statute tolls the limitations period for tort actions brought by the victim of an alleged crime while a criminal prosecution is pending.  Plaintiff does not allege that there is a pending criminal prosecution regarding any of Plaintiff's claims in this case.

[17]  The final disposition of the Caffrey estate in Probate Court by Judge Rosh occurred in 2005 and is also not barred by the statute of limitations.  The Court addresses these incidents in relation to the County Defendants' Motion to Dismiss.

Action for his federal claims, but regardless, these claims are barred because the Superior Court, along with the other State Defendants, is entitled to Eleventh Amendment immunity.

A State is not a "person" within the meaning of § 1983.  The Eleventh Amendment bars suit against a State brought by both citizens of another state and the State's own citizens.  <u>McClendon v. Ga. Dep't of Cmty. Health</u>, 261 F.3d 1252, 1256 (11th Cir. 2001).  Eleventh Amendment immunity bars suits in federal court against state agents and state instrumentalities.  <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997).  A state instrumentality is entitled to Eleventh Amendment immunity when its nature is such that it should be considered an "arm of the state" and recovery of money against that entity is, in essence, a recovery against the state.  <u>Id.</u> at 429-30.

Defendants the Superior Court, the State of Georgia,[18] DeKalb County

DFCS, and the State of Georgia DHR are all state agencies or arms of the state.

See McCall v. Dept. of Human Resources, 176 F. Supp. 2d 1355, 1363 (M.D. Ga.

2001) (holding DHR is a state entity entitled to Eleventh Amendment immunity);

see also Powell v. Dept. of Human Res. of Ga., 918 F. Supp. 1578-79 (S.D. Ga.

1996) (holding that Cobb County DFCS is a state agency for purposes of Eleventh

Amendment immunity and recognizing that DFCS is a state agency that is set up in

each county solely for administrative convenience); Kaimowitz v. Fla. Bar, 996

F.2d 1151, 1155 (11th Cir. 1993) ("The Eleventh Amendment prohibits actions

against state courts and state bars."); Alyshah v. Supreme Court of Ga., 2006 U.S.

---

[18] In his Complaint, Plaintiff clearly states that he is suing Governor Perdue only in his official capacity.  In his response, Plaintiff concedes that there may be a "defect" in his pleading as it relates to suing Governor Perdue in his individual capacity.  (Pl. Resp. to State Def. [35], at 8.)  "[A] suit against a governmental officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent."  McMillian v. Monroe County, Ala., 520 U.S. 781, 785 n.2 (1997).  In his Response, Plaintiff states that shortly he will file a motion for leave to amend his Complaint to assert claims against Governor Perdue in his individual capacity.  Plaintiff, however, did not move to amend.  Even if he had, such an amendment would have been futile.  The letter Plaintiff offers as evidence that Governor Perdue ignored his requests for help was written in 2003–well after the statute of limitations had run.  Plaintiff does not allege that Governor Perdue was in a direct supervisory capacity over the defendant courts such that he was aware of the attempted rights violations which Plaintiff alleges.

Dist. LEXIS 70321, at *3-4 (N.D. Ga. July 28, 2006) (holding that the "Eleventh Circuit has explicitly held that Eleventh Amendment immunity applies to state courts, including the Supreme Court of Georgia and the Superior Court of DeKalb County"). The State Defendants are entitled to Eleventh Amendment immunity, and Plaintiff's federal claims against the State Defendants must thus be dismissed.

2.     *Defendant Officer Porter's Motion to Dismiss*

Defendant Officer Porter, an employee of the Stone Mountain Police Department, also argues that the claims brought against him under §§ 1983 and 1985 are barred by the two-year statute of limitations. He argues that his involvement in this case is limited to the events that occurred on June 4, 2002. On that day, Officer Porter encountered Plaintiff at the Caffrey home and filed the Family Violence Incident Report. The Court agrees that Plaintiff's federal claims against Defendant Porter are barred.

Plaintiff does not allege a single action taken by Defendant Porter that falls within the statute of limitations period. Instead, he again argues that the torts committed by Porter were continuing and that he recently discovered information that was withheld and that prevented his filing of the Complaint on an earlier date. As previously discussed, the continuing tort theory applies only where a plaintiff

could not have discovered the injury he alleges to have suffered.  Here, Plaintiff

was present at the June 2002 incident, and he knew that his POA was being

challenged due to accusations that he was not properly caring for his aunt.  Plaintiff

does not offer any explanation, nor does he detail what specific information was

withheld from him that prevented him from becoming aware of the actions taken

against him.  Indeed, his pleadings establish that he was aware of his alleged

claims but failed to timely assert them.  Plaintiff's §§ 1983 and 1985 claims are

barred by the two-year statute of limitations and must be dismissed.

3.     *The County Defendants' Motion to Dismiss*

The County Defendants also argue that Defendants' claims under §§ 1983

and 1985 are barred by the statute of limitations.[19]  For the reasons stated

---

[19]  The County Defendants argue that Fire and Rescue Services should be
dismissed from this action because it is not an entity capable of being sued.
Defendants argue that it is merely an administrative division of DeKalb County.
See Shelby v. City of Atlanta, 578 F. Supp. 1368 (N.D. Ga. 1984) ("Plaintiff
cannot state a claim against the City of Atlanta Police Department because the
Department is not a proper party defendant.  The Department is an integral part of
the City of Atlanta government and is merely the vehicle through which the City
government fulfills its policing functions.").  The Court agrees that, like a police
department, Fire and Rescue Services is an administrative vehicle through which
the County provides fire and rescue services.  Even if it were not, Fire and Rescue
Services should be dismissed from this action because claims against it are barred
by the statute of limitations.  The extent of its involvement consists of the June
2002 incident at Caffrey's home when its officers responded to the 911 call.

previously in this Order, the Court agrees that all actions taken by the County

Defendants before December 5, 2004, are time-barred.[20]  The only remaining

County Defendants implicated in events allegedly occurring after this date are

Judge Rosh (who presided over the probate of the Caffrey estate and concluded the

administration of the Caffrey estate in November 2005), the DeKalb County

Probate Court, and DeKalb County.[21]  For the reasons discussed below, these

---

[20]  Plaintiff makes various allegations to support his claim that the guardianship hearing over which Defendant Rosh presided was an improper method for handling the issue of elder abuse and that it was improper for her to terminate Plaintiff's POA.  Plaintiff further argues that it was improper for Rosh to preside over the hearing at the time because she was a clerk rather than a judge.  First, the guardianship hearing occurred in 2002, and §§ 1983 and 1985 claims arising from it are barred by the statute of limitations.  Second, pursuant to O.C.G.A. § 15-9-13(a), "[w]henever a judge of the probate court is disqualified to act in any case or because of sickness, absence, or any other reason is unable to act in any case, the judge of the probate court may appoint an attorney at law who is a member of the State Bar of Georgia to exercise the jurisdiction of the probate court" and that if the judge does not make such an appointment, "the judge of the city or state court . . . shall exercise all the jurisdiction of the judge of the probate court in the case."  The statute further provides that if the city or state court judge is unable to serve in the case, "the clerk of the judge of the probate court shall exercise all the jurisdiction of the judge of the probate court. . . ."  O.C.G.A. § 15-9-13(b).  Plaintiff does not allege that Rosh was not properly appointed to act as a probate judge.

[21]  The County Defendants argue that Plaintiff's claims against the individual defendants in their official capacities should be dismissed because they are duplicative.  The Court agrees.  "[A] suit against a governmental officer 'in his official capacity' is the same as a suit against the entity of which the officer is an

claims are also barred because Judge Rosh and the DeKalb County Probate Court are entitled to immunity,[22] and Plaintiff has not alleged a basis for holding DeKalb County liable.

In his Response, Plaintiff bases his entire claim for civil rights violations on the allegedly improper guardianship hearing conducted by Defendant Rosh in 2002. As previously noted, all claims arising from the guardianship hearing are barred by the statute of limitations. The Court further holds that the probating of

------

agent." McMillian, 520 U.S. at 785 n.2. "The Eleventh Circuit has held that when an officer is sued in his or her official capacity, the suit is simply another way of pleading an action against the city that the officer represents. Consequently, it would be redundant to allow [Plaintiff] to sue both the [county] and the officers in their official capacity." Hyath v. City of Decatur, 2006 U.S. Dist. LEXIS 21184, at *36 (N.D. Ga. Mar. 28, 2006) (citing Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991)).

[22] The Court finds that Defendant DeKalb County Probate Court is entitled to Eleventh Amendment immunity. As previously discussed, Eleventh Amendment immunity bars suits in federal court against state agents and state instrumentalities. Regents of the Univ. of Cal., 519 U.S. at 429. The Eleventh Circuit has clearly held that the "Eleventh Amendment prohibits actions against state courts and state bars." Kaimowitz, 996 F.2d at 1155. The Constitution of the State of Georgia provides: "The judicial power of the state shall be vested exclusively in the following classes of courts: magistrate courts, **probate courts**, juvenile courts, state courts, superior courts, Court of Appeals and Supreme Court." Ga. Const. art. VI, § 1, P 1. Thus, the DeKalb County Probate Court, as a state court, is entitled to Eleventh Amendment immunity.

the Caffrey estate, and Judge Rosh's grant of summary judgment in favor of the

estate in November 2005, also do not subject Judge Rosh to liability.

First, Judge Rosh is immune from suit under the principle of judicial

immunity.[23]  It is well-settled that judges are absolutely immune from liability for

damages for their judicial acts.  Mireles v. Waco, 502 U.S. 9, 9 (1991).  A plaintiff

may overcome a defendant's judicial immunity only under two circumstances:

"First, a judge is not immune from liability for nonjudicial actions, i.e., actions not

taken in the judge's judicial capacity. . . . Second, a judge is not immune for

actions, though judicial in nature, taken in the complete absence of all

jurisdiction."  Mireles, 502 U.S. at 11-12.  Whether an act is judicial shall be

determined by "'the nature of the act itself, i.e., whether it is a function normally

performed by a judge, and . . . the expectations of the parties. . . .'"  Id. at 12

(quoting Stump v. Sparkman, 435 U.S. 349 (1978)).  "[J]udicial immunity is not

overcome by allegations of bad faith or malice, the existence of which ordinarily

cannot be resolved without engaging in discovery and eventual trial."  Mireles, 502

U.S. at 11.

---

[23]  Judge Rosh was elected in 2004 and began serving as a Judge in the
Probate Court in January 2005.

In this case, Plaintiff appeared before Judge Rosh to challenge the emergency guardianship hearing and to object to Lillig's administration of the Caffrey estate after his aunt's death. In the guardianship hearing, Judge Rosh appointed a guardian for Ms. Caffrey pursuant to O.C.G.A. § 29-5-14. During the administration of the Caffrey estate, she presided over the probate of the will, granted summary judgment, and determined that the probate of the estate was complete. In both instances, Judge Rosh acted in a function normally performed by a judge and within her jurisdiction. Thus, Judge Rosh is entitled to judicial immunity for the claims against her.

The County Defendants next argue that Plaintiff's § 1983 claims against DeKalb County should be dismissed because DeKalb County may not be held liable unless the Defendants acted pursuant to official policy or custom of discrimination.[24] There is no respondeat superior liability under § 1983. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (2001). When seeking to establish municipal liability under § 1983, "the plaintiff has the burden to show that a

---

[24] Although Defendants did not make the argument, the Court notes that because the Probate Court, Superior Court, and State Court are arms of the State of Georgia rather than DeKalb County, it is doubtful that DeKalb County could be held liable under a § 1983 municipal liability theory for any "actions" taken by these state court defendants.

deprivation of constitutional rights occurred as a result of an official government policy or custom."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

A local government body is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Monell, 436 U.S. at 694.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  A custom is a practice that is so settled and permanent that it takes on the force of law."  Cooper, 403 F.3d at 1221 (quotation and citations omitted).  "[T]o prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  Griffin, 261 F.3d at 1308 (citations and quotations omitted).  "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."  Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991).  "This

-26-

threshold identification of a custom or policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality."  McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004) (internal quotations omitted).

"There are three ways to show a governmental policy or custom: 1) an express policy; 2) a widespread practice that is so permanent and well-settled as to constitute a custom; or 3) the act or decision of a municipal official with final policy-making authority."  Hyath, 2006 U.S. Dist. LEXIS 21184, at *29-30.  In this case, Plaintiff does not point to any express policy, widespread practice or custom, or decision by a final policymaker that caused the alleged violation of his civil rights–specifically the alleged discriminatory proceedings in the Probate

Court, the Wachovia Action, and the Hicks Action.[25]  Thus, the § 1983 claim

seeking municipal liability against DeKalb County must be dismissed.

    C.    <u>Plaintiff's Remaining State Law Claims</u>

    The Court has dismissed all federal claims against all Defendants.  "A

district court may decline to exercise supplemental jurisdiction over a [state law]

claim . . . if . . . the district court has dismissed all claims over which it has original

jurisdiction . . . ."  28 U.S.C. § 1367(c).  "The decision on [whether to retain

_____

[25]  It is unclear whether Plaintiff's § 1983 "for failure to prevent" is based on
a municipal custom or policy or supervisory liability.  To the extent that Plaintiff
asserts a claim under § 1983 for failure to supervise or prevent violations from
occurring, this claim also fails.  "Supervisory liability occurs either when the
supervisor personally participates in the alleged constitutional violation or when
there is a causal connection between actions of the supervising official and the
alleged constitutional deprivation."  <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th
Cir. 1990).  This causal connection can be shown "when a history of widespread
abuse puts the responsible supervisor on notice of the need to correct the alleged
deprivation, and he fails to do so."  <u>Id.</u> (finding no "obvious, flagrant, rampant"
and continued abuse and that prison supervisors were unaware of any problems,
therefore there was no supervisory liability); <u>see also</u> <u>Cross v. Ala. Dep't of Mental
Health</u>, 49 F.3d 1490, 1508 (11th Cir. 1995) (finding liability under § 1983 where
supervisors were on notice of the need to correct the discrimination and failed to do
so, stating that the deprivations that constitute widespread abuse sufficient to notify
the supervising official were obvious, flagrant, rampant and of continued duration,
rather than isolated occurrences).  Plaintiff has not alleged that any County
defendant was in a supervisory capacity over the defendant courts and was aware
of widespread abuse that put the supervisor on notice of the need to correct the
alleged deprivation, and he failed to do so.

jurisdiction over the state-law claims] should be and is vested in the sound

discretion of the district court."  Rowe v. City of Fort Lauderdale, 279 F.3d 1271,

1288 (11th Cir. 2002).  See generally United Mine Workers of Am. v. Gibbs, 383

U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial,

even though not insubstantial in a jurisdictional sense, the state claims should be

dismissed as well.").  The Court finds the relevant factors counsel against retaining

supplemental jurisdiction over Plaintiffs' state-law based claims, and the claims are

dismissed without prejudice.[26]

    D.    Miscellaneous Motions

        1.    *Plaintiff's Motion for Default Judgment against the State Defendants*

---

[26] Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order in this case.  (TRO [6].)  The Court notes that it attempted to schedule a hearing on the Motion soon after it was filed, but Plaintiff was unavailable for a hearing.  At this stage in the litigation, a request for preliminary injunction is moot.  Nonetheless, Plaintiff cannot meet the requirements for granting an injunction in this case.  A party seeking a preliminary injunction must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant; and (4) granting the injunction would not be adverse to the public interest.  Warren Publ'g Inc. v. Microdos Data Corp., 115 F.3d 1509 (11th Cir. 1997).  Because the Court finds Plaintiff's federal claims fail to state a claim for which relief may be granted, Plaintiff cannot show that there is a substantial likelihood of success on the merits. An injunction is not warranted in this case, and Plaintiff's Motion [6] is **DENIED**.

Plaintiff also filed a Motion for Default Judgment against the State Defendants.  (Mot. for Default [68].)  He argues that although the State Defendants filed a motion to dismiss in response to his Complaint, they have yet to file an Answer and are in default.  Plaintiff's argument is meritless.  Rule 4(d)(3) of the Federal Rules of Civil Procedure allows a defendant who waives service to file an answer within 60 days after the date on which the request for waiver of service was sent.  Fed. R. Civ. P. 4(d)(3).  Under Federal Rule of Civil Procedure 12(b), rather than filing an answer, a defendant may respond to a complaint by moving to dismiss it for failure to state a claim upon which relief can be granted.  The State Defendants filed their motion to dismiss within 60 days of the date Plaintiff sent the waivers.  Plaintiff's Motion for Default Judgment is denied.

2. *Plaintiff's Motion for Default Judgment against Defendant DeKalb County Solicitor's Office and Defendant State Court of Georgia*

Plaintiff also requests default judgment to be entered against Defendants DeKalb County Solicitor's Office and Defendant State Court of Georgia.  No opposition to the motion was filed.  Upon default, the well-pleaded allegations of a complaint are taken as true.  See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); Dundee Cement Co. v. Howeard Pipe &

Concrete Prod., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983). "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." Nishimatsu, 515 F.2d at 1206. Thus, a default judgment may only be lawfully entered where there is a sufficient basis in the pleadings. Id.

As previously discussed, the Eleventh Amendment immunity bars suits in federal court against state agents and state instrumentalities, including actions against state courts. Kaimowitz, 996 F.2d at 1155. Thus, Defendant "State Court of Georgia" is entitled to Eleventh Amendment immunity from suit. Plaintiff's allegations do not support his motion for default judgment against the State Court of Georgia, and it is denied.

The Court next turns to the default judgment motion against the DeKalb County Solicitor's Office.[27] Plaintiff appears to bring two claims against the Solicitor's Office–a § 1983 claim for failure to instruct and supervise employees not to violate Plaintiff's rights, (Compl., at ¶ 190), and a state law defamation

---

[27] The Court suspects that the DeKalb County Solicitor's Office, like a police department and Fire and Rescue Services, is not an entity capable of being sued because it is merely an administrative division of DeKalb County. See Shelby, 578 F. Supp. at 1368.

claim.  (Compl., at ¶ 227.)  As the Court previously noted, Plaintiff has failed to state a claim for municipal or supervisory liability under § 1983.  The Court also declined supplemental jurisdiction over Plaintiff's state law claims, including the claim for defamation.  Plaintiff's allegations do not support his motion for default judgment against the Solicitor's Office, and it is denied.

### 3.    *Plaintiff's Motion for Leave to Amend the Complaint*

Plaintiff also seeks leave to amend his Complaint to provide further allegations in support of his claims against the State Court of Georgia and the Superior Court.  (Mot. to Amend [69]; Proposed First Am. Compl. [69-2].)  Essentially, Plaintiff alleges the Defendants have continued to violate his rights in two ongoing litigations–the Wachovia Action in the Superior Court and the Hicks Action in State Court.  Plaintiff complains that unfavorable rulings in both courts have adversely affect him.

Under Federal Rule of Civil Procedure 15(a), a court should give leave to amend freely "when justice so requires."  Fed. R. Civ. P. 15(a).  The district court, however, need not allow an amendment where the amendment would be futile.  Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).  Here, Plaintiff's amendment would be futile because the Court has already determined that both the

State Court of Georgia and the Superior Court are state entities and are thus immune from suit.  Plaintiff's Motion to Amend is denied.[28]

## III.   CONCLUSION

Accordingly,

Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order [6] is **DENIED**; the State Defendants' Motion to Dismiss [20] Plaintiff's federal claims is **GRANTED**; Plaintiff's Motion for Order for Clerk to Sign and Seal Summonses for State Defendants [24] is **DENIED**; Plaintiff's Motion for Exemption for Payment of Pacer User Fee [26] is **DENIED**; Defendant Officer R.B. Porter's Motion to Dismiss [27] Plaintiff's federal claims is **GRANTED**; Plaintiff's Motion to Alter Service of Process [39] is **DENIED**; the County Defendants' Motion to Dismiss [37] Plaintiff's federal claims is **GRANTED**; Plaintiff's Motion for Default Judgment as to DeKalb County Solicitor's Office [67] is **DENIED**; Plaintiff's Motion for Default Judgment as to State Defendants

---

[28]   Plaintiff also asks this Court for "permission and assistance to present evidence of criminal activity to the federal grand jury" and requests an investigation into the circumstances surrounding his Complaint.  (Mot. for Permission and Assistance [58].)  This Court is not the proper venue for Plaintiff to report criminal activity.  Plaintiff may report crimes to the appropriate law enforcement authorities.  Plaintiff's Motion is **DENIED**.

[68] is **DENIED**; Plaintiff's Motion for Leave to File Amended Complaint [69] is

**DENIED**; Plaintiff's Motion for Permission and Assistance [58] is **DENIED**; and

Plaintiff's Motion to Recover Costs [72] is **DENIED**.  Plaintiff's Motion for

Discovery [80] is thus **DENIED** as **MOOT**.

Plaintiff's state law claims are dismissed without prejudice.

**SO ORDERED** this 16th day of July, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE